**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 19, 2010
Decided July 20, 2010

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 09-1085

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>EDWARD ANTHONY LIPSCOMB,<br>    *Defendant-Appellant*. | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division.<br><br>No. 2:07-CR-43<br><br>James T. Moody,<br>*Judge*. |

**O R D E R**

Edward Anthony Lipscomb was tried and convicted of two counts of possessing crack cocaine with the intent to distribute it. Lipscomb raises two issues in this direct appeal, but it turns out that he got the timing wrong on both. First, Lipscomb alleges a violation of his rights under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*. But Lipscomb did not file a motion to dismiss the indictment prior to trial as required by the Act, and so he is too late to succeed on this claim. Second, Lipscomb argues ineffective assistance of counsel. On this claim, he is almost certainly too early – we have repeatedly asserted that ineffective-assistance claims are best brought in post-conviction proceedings. But Lipscomb chose not to heed our warning. Like many before him, he is unable to establish ineffective assistance

on the record available to him, and as a result of raising the issue here, the law of the case doctrine will apply should he try on a later occasion to return to this subject.

**I**

Between January 26 and March 5, 2007, federal officers and a confidential informant conducted five controlled buys of crack cocaine from Lipscomb. These transactions netted the government 21.9 grams of crack. On March 14, the same officers stopped Lipscomb for driving with a suspended license, a misdemeanor in Indiana. The officers searched Lipscomb's person and discovered a plastic baggy in his pocket containing a substance later determined to be 4.6 grams of crack cocaine. The officers then executed a previously-obtained search warrant at Lipscomb's apartment, where they discovered various items related to his drug activities: 4.2 grams of crack cocaine; a small digital scale with crack-cocaine residue; a knife with more residue; plastic baggies; 4.8 grams of marijuana; and a loaded handgun.

On March 21, 2007, Lipscomb was indicted by a grand jury. In a superceding indictment, Lipscomb was charged with five counts of distributing crack cocaine, two counts of possessing crack cocaine with the intent to distribute, one count of possessing marijuana, and one count of possessing a firearm in furtherance of a drug crime. Eventually, the government withdrew all of the charges except the two counts of possession of crack cocaine with the intent to distribute. Among the withdrawn counts were those connected to the five controlled buys.

Twice the government filed motions to continue scheduled trial sittings; the magistrate judge assigned to the case granted both motions, thereby permitting 303 days of delay. On both occasions, counsel for Lipscomb agreed to the continuances. At no point in the proceeding did defense counsel file a motion to dismiss based on the Speedy Trial Act. Lipscomb himself wrote a *pro se* letter to the district court asking for dismissal of the indictment on speedy trial grounds, but when the district court called a hearing, Lipscomb withdrew his request and no formal motion to dismiss was filed or ruled upon.

The district court held a two-day trial beginning on June 4, 2008. In order to avoid revealing the identity of the confidential informant, the government chose not to call him or her, and so no evidence of the controlled buys was introduced at trial. The jury reached a verdict on June 5, finding Lipscomb guilty of the two remaining counts against him.

After the verdict, at Lipscomb's request, defense counsel moved to withdraw. Lipscomb complained that his counsel had failed to raise an entrapment defense in the trial, and he wanted new counsel for the remainder of the proceedings. It seems that Lipscomb

thought that his counsel should have argued that the police's use of the confidential informant to purchase drugs "entrapped" him into entering the drug business. It is unclear, however, why he thought that this defense had anything to do with the counts of conviction; as we noted, evidence of the controlled buys was not introduced at trial, nor was Lipscomb convicted of any conduct related to those transactions. The district court held a hearing, in which defense counsel explained that he did not pursue an entrapment defense because he believed it to be a "meritless defense." Counsel mentioned his concern with "opening the door" and said that he saw "no drastic difference between the money exchanged and the drugs exchanged." The former comment is straightforward enough: counsel feared "opening the door" to evidence related to the prior drug sales. Such evidence would have supported the intent-to-distribute element of the offense. We are not certain what he meant by the latter statement. One possible interpretation is that the price paid for the drugs was in line with the value of the drugs exchanged and thus would not indicate that Lipscomb was induced (that is to say, "entrapped") into selling drugs that he otherwise would not have sold. In any event, the district court granted Lipscomb's request and converted counsel into standby counsel for the remainder of the proceedings.

At sentencing, the government introduced evidence of relevant conduct sufficient to qualify for an offense level of 28 and a guidelines range of 78 to 97 months' imprisonment. The district court sentenced Lipscomb to 97 months on December 28, 2007. Lipscomb appeals only from the judgment of conviction; he raises no separate arguments against his sentence.

## II

### A

The Speedy Trial Act requires that a defendant be brought to trial within 70 days from the later of the date when the indictment is filed or the date when the defendant first appears before a judicial officer with the charge pending. 18 U.S.C. § 3161(c)(1). The remedy for a violation of the Act is dismissal of the indictment. *Id.* § 3162(a)(2). The Act establishes both the 70-day clock and the exclusions of certain periods from it, *id.* § 3161(h), including time explicitly excluded for the ends of justice, *id.* § 3161(h)(7)(A). In order to invoke the ends-of-justice exclusion, the district court must place findings on the record supporting its decision to exclude the time. *Id.* See *Zedner v. United States*, 547 U.S. 489, 508 (2006). In this case, the district court granted the government's two motions for continuances and excluded almost ten months pursuant to the ends-of-justice exception. The court properly placed findings on the record at the time that it granted the continuances.

Lipscomb now asserts that these exclusions were in error, but we cannot entertain a Speedy Trial Act argument raised for the first time on appeal. According to the Act, "[f]ailure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2). As we said in *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004), "[t]he Act explicitly provides that a defendant's failure to move to dismiss the indictment constitutes a waiver – not a forfeiture – of his rights under the Act . . . and we may not disregard this provision." Lipscomb never formally moved to dismiss the indictment. Although Lipscomb sent a *pro se* letter that sought dismissal of the case because of alleged violations of the Speedy Trial Act by the government, he withdrew that request in open court before the district court ruled on the motion, telling the judge that he had discussed the matter with counsel and had no objection to proceeding. This equivocal conduct is not enough to save his claim. We find that Lipscomb waived his Speedy Trial Act.

B

Lipscomb also contends that his conviction should be set aside because his trial counsel was ineffective. Counsel, he continues to insist, should have argued that the government entrapped him when it used the confidential informant to carry out five drug buys. As a threshold matter, we repeat our oft-given advice that claims of ineffective assistance of counsel are best reserved for post-conviction proceedings, where the defendant has the benefit of a post-conviction record on which to articulate her ineffective-assistance claim. *United States v. Harris*, 394 F.3d 543, 557 (7th Cir. 2005). See *Massaro v. United States*, 538 U.S. 500 (2003). Not only are ineffective-assistance claims unlikely to prevail on direct appeal, but an adverse ruling on direct appeal reverberates on collateral review – the law of the case doctrine applies to future iterations of the ineffectiveness claim, even if new evidence is uncovered. See *Harris v. United States*, 366 F.3d 593, 595 (7th Cir. 2004) (stating that defendant's ineffective-assistance claim on direct appeal is binding in a § 2255 proceeding).

We raised this issue with appellate counsel at oral argument, but, perhaps seeing no alternative, he chose to press ahead. Waiting might have been preferable, because Lipscomb's ineffective-assistance claim falls flat on this record, but on the other hand it seems likely that  nothing would have made a difference. Under the test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant "must show both that his attorney's performance was outside the range of professionally competent assistance and that the deficient performance denied him a fair trial." *United States v. Banks*, 405 F.3d 559, 569 (7th Cir. 2005). Defendants pursuing ineffectiveness claims must show prejudice: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* We have no reason to address the question

whether trial counsel's performance was deficient (and thus should not be taken as implying that it was), because the weakness of this claim is apparent with respect to prejudice. Lipscomb must show that counsel's performance would have affected the outcome, but we cannot see any way in which an entrapment defense could have helped Lipscomb – he claims that he was entrapped in the five controlled buys, but he was not charged with conduct related to any of those transactions nor did the jury hear any evidence related to those deals. In other words, Lipscomb has not shown any probability – let alone a reasonable probability – that the outcome of his trial would have been different but for counsel's conduct.

For these reasons, we AFFIRM the judgment of the district court.